# EXHIBIT D

| STATE OF MICHIGAN | SUMMONS AND COMPLAINT | CASE NO. |
|---|---|---|
| JUDICIAL DISTRICT<br>22nd JUDICIAL CIRCUIT<br>COUNTY PROBATE | | 16-990CB |

Archie C Brown

| Court address | Court telephone no. |
|---|---|
| 101 E. Huron Street, Ann Arbor, MI 48107 | (734) 222-3270 |

| Plaintiff's name(s), address(es), and telephone no(s). | | Defendant's name(s), address(es), and telephone no(s). |
|---|---|---|
| CAN IV PACKARD SQUARE LLC | v | PACKARD SQUARE LLC<br>c/o Registered Agent Craig Schubiner<br>1900 S. Telegraph Road, Suite 200<br>Bloomfield Hills, MI 48302 |

| Plaintiff's attorney, bar no., address, and telephone no. |
|---|
| Dickinson Wright PLLC<br>J. Benjamin Dolan (P47839)<br>2600 W. Big Beaver Road, Suite 300<br>Troy, Michigan 48084<br>(248) 433-7200 |

**SUMMONS** **NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state). (MCR 2.111[C])
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued | This summons expires | Court clerk |
|---|---|---|
| JAN 20 2017 | | |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

**COMPLAINT** *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

☑ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

**Family Division Cases**

☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.

☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**General Civil Cases**

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in _____ Court.

The action ☐ remains ☐ is no longer pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

**VENUE**

| Plaintiff(s) residence (include city, township, or village) | Defendant(s) residence (include city, township, or village) |
|---|---|
| Delaware Corporation | Ann Arbor, Michigan |

| Place where action arose or business conducted |
|---|
| Washtenaw County |

| 10/21/2016 | |
|---|---|
| Date | Signature of attorney/plaintiff |

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (5/15) SUMMONS AND COMPLAINT MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

## CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

☐ **OFFICER CERTIFICATE**

I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that:   (notarization not required)

OR

☐ **AFFIDAVIT OF PROCESS SERVER**

Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that:   (notarization required)

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint, together with _____

List all documents served with the Summons and Complaint

_____

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

I declare that the statements above are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled | Mileage fee $ | Total fee $ |
|---|---|---|---|

Signature _____

Name (type or print) _____

Title _____

Subscribed and sworn to before me on _____ , _____ County, Michigan.
Date

My commission expires: _____ Signature: _____
Date                                          Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
Attachments

_____ on _____
Day, date, time

Signature

# STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF WASHTENAW

CAN IV PACKARD SQUARE LLC
a Delaware limited liability company,

        Plaintiff,

v.

PACKARD SQUARE LLC, a
Michigan limited liability company,

        Defendant,

and

JERMOR PLUMBING & HEATING, INC.,
a Michigan corporation, and GAYLOR
ELECTRIC INC. a foreign corporation,

        Additional Lien Claimant Defendants.

Case No. 16 990 CB

Hon. Archie C Brown

**BUSINESS COURT
ELIGIBLE**

---

DICKINSON WRIGHT PLLC
J. Benjamin Dolan (P47839)
James B. Cunningham (P63131)
Ariana F. Pellegrino (P79104)
*Attorneys for Plaintiffs*
2600 W. Big Beaver Rd., Suite 300
Troy, Michigan 48084
(248) 433-7200
bdolan@dickinsonwright.com
jcunningham@dickinsonwright.com
apellegrino@dickinsonwright.com

---

In accordance with MCR 2.112(O)(1), this complaint
meets the statutory requirements to be assigned to the business court.

There is no other pending or resolved civil action arising
out of the transactions or occurrence alleged in the complaint.

## PLAINTIFF'S VERIFIED COMPLAINT FOR
## APPOINTMENT OF RECEIVER AND OTHER RELIEF

1

Plaintiff CAN IV Packard Square LLC ("**Plaintiff**"), a Delaware limited liability company, by and through its attorneys, Dickinson Wright PLLC, and in support of its Verified Complaint for Appointment of Receiver and Other Relief against Defendant, states as follows:

## NATURE OF THE CASE

1.     This suit involves multiple defaults under a substantial construction loan in the maximum principal amount of nearly $54 million to Defendant Packard Square LLC ("**Defendant**" or "**Borrower**") to finance the construction of a mixed-use development in Washtenaw County ("**Project**").

2.     After borrowing substantial funds, Defendant has failed to fulfill its obligations to complete construction of improvements for which funds were provided in accordance with the relevant loan agreements and has failed to maintain the Property in a suitable condition.  Indeed, with cold weather fast approaching and the construction project incomplete, the improvements to the subject property securing the construction loan is in serious jeopardy.

3.     Accordingly, Plaintiff seeks the appointment of a Receiver pursuant to MCL § 600.2927 to prevent waste and MCL § 570.1122, *et seq.*, (a) to take possession of the subject property located in Washtenaw County securing the debt, as set forth *infra*, on which incomplete improvements exist, (b) to borrow funds pursuant to MCL § 570.1122(a) to winterize, protect and preserve the improvements and to complete construction of the improvements, and (c) to sell, if necessary, such property, when finished, and distribute the proceeds of sale to the parties in accord with the priority of their interests.

## PARTIES, VENUE AND JURISDICTION

4.     Plaintiff is a Delaware limited liability company.

2

5. Upon information and belief, Defendant is a Michigan limited liability company that conducts business, and owns real property located, in Washtenaw County.

6. The following parties are joined to this action as Additional Defendants because, upon information and belief, they have filed a claim of lien or hold an interest of record in the subject property mortgaged to Plaintiff which lien or interest will be affected or extinguished by the relief sought in this action.

    a. Gaylor Electric Inc. d/b/a Gaylor Inc. ("**Gaylor**"), a foreign corporation which conducts business in Washtenaw County and which recorded a claim of lien in the amount of $916,312.91, recorded on September 29, 2016, Liber 5171, Page 959, Washtenaw County Records;

    b. Jermor Plumbing & Heating, Inc. ("**Jermor**"), a Michigan corporation which conducts business in Washtenaw County, recorded a claim of lien in the amount of $330,958.06, recorded on October 6, 2016, Liber 5172, Page 977, Washtenaw County Records.

7. Gaylor and Jermor are referred to herein as "**Additional Defendants**." Plaintiff seeks no affirmative relief against the Additional Defendants apart from extinction of their liens on the subject property. As such, the Additional Defendants are joined in this action to afford notice of this proceeding which will affect their claimed interest in the subject property.

8. This Court has jurisdiction over this matter pursuant to MCL 600.2926 and MCL 600.2927.

9. Venue is proper before this Court pursuant to MCL 600.1605 and MCL 600.1621

3

because the subject property is located in Washtenaw County, Michigan, and Defendant has, at all relevant times, conducted business in Washtenaw County, Michigan.

10.　　This case qualifies for Business Court assignment, and this matter should be identified as Business Court Eligible pursuant to MCL 600.8031 and MCL 600.8035 and LAO 2013-01J. Further, pursuant to MCL 600.8031(1)(c)(i) and MCL 600.8031(2)(d), (f), this case is eligible for the Business Court assignment because all the parties are business enterprises and this case involves commercial business transactions and commercial real property.

## FACTUAL ALLEGATIONS

11.　　Plaintiff incorporates by reference the preceding allegations as if fully restated herein.

### A. Loan Documents and Secured Indebtedness

12.　　On or about October 1, 2014, Plaintiff entered into a Construction Loan Agreement (the "**Original Loan Agreement**") with Defendant pursuant to which it agreed to loan Defendant the maximum principal amount of $53,783,184.00 for use by Defendant for the purpose of constructing the Project.

13.　　The Original Loan Agreement was subsequently amended and restated by that certain Reinstatement and Amendment Agreement (the "**Reinstatement**") dated as of March 30, 2015, by and between Borrower and Lender, as further amended by that certain Second Amendment to Loan Documents (the "**Second Amendment**") dated as of November 3, 2015, by and between Borrower and Lender, as further amended by that certain Third Amendment to Loan Agreement (the "**Third Amendment**") dated as of April 22, 2016, by and between Borrower and Lender, as further amended by that certain Fourth Amendment to Loan Agreement

4

(the "**Fourth Amendment**") dated as of June 22, 2016, by and between Borrower and Lender, and as further amended by that certain Fifth Amendment to Loan Agreement (the "**Fifth Amendment**") dated as of July 15, 2016, by and between Borrower and Lender (the Original Loan Agreement, as amended by the Reinstatement, the Second Amendment, the Third Amendment, the Fourth Amendment and the Fifth Amendment, is sometimes collectively referred to herein as the "**Loan Agreement**") (attached collectively as **Ex. 1**).

14.    On October 1, 2014, Defendant executed and delivered commercial loan documents to Plaintiff, including among other documents, the following:

a) Promissory Note dated October 1, 2014, between Defendant and Plaintiff in the principal amount of $53,783,184.00 ("**Note**," **Ex. 2**);

b) Mortgage dated October 1, 2014, between Defendant and Plaintiff (recorded October 2, 2014, Document No. 6226763, Liber 5060 Page 229 Washtenaw County Register of Deeds) (the "**Mortgage**," **Ex. 3**);

c) Absolute Assignment of Leases and Rents dated October 1, 2014, between Defendant and Plaintiff (recorded October 2, 2014, Document No. 6226764, Liber 38393 Page 809 Oakland County Register of Deeds) (the "**ALR**," **Ex. 4**);

d) UCC Filings ("**UCC Filings**," **Ex. 5**);

e) Assignment of Permits, Licenses, Approvals, Agreements and Documents ("**Construction Agreement Assignment**," **Ex. 6**).[1]

---

[1]Pursuant to the Construction Agreement Assignment, Defendant assigned to Plaintiff:

all contracts and agreements relating to, arising from or required for the ownership, management, construction, leasing, use, occupancy, operation or alteration of the Property including, without limitation, all development agreements, franchise agreements, management agreements, name or chain affiliation agreements, concession agreements and design, construction, maintenance, repair, service and utility contracts and agreements including, without limitations, any water, sewer or other allocation, access or service agreement, any and all furniture, fixture, and/or

5

15.     Pursuant to the Note, Mortgage and Loan Agreement, Defendant became indebted to Plaintiff in the principal amount of $53,783,184.00, which debt shall be referred to herein as the "**Loan**."

16.     Repayment of the Loan is secured by, among other things, the liens, security interests, and the terms and conditions contained within the Mortgage and other Loan Documents (identified and defined below)(see generally, Ex. 3, Mortgage).

17.     Repayment of the Loan and completion of the construction project in accordance with the Loan Documents was further secured and guaranteed by a Non-Recourse Carve-Out Guaranty and Completion Guaranty, executed by Craig Schubiner in favor of Plaintiff on October 1, 2014 (**Ex. 7** and **Ex. 8**, respectively).[2]

18.     The Mortgage, ALR, and other Loan Documents encumber the subject commercial real property located in Washtenaw County, Michigan, more particularly described in the legal description contained in the Mortgage, and attached as **Ex. 9**; commonly known as 2502-2568 Packard Road, Ann Arbor, Michigan 48104, as well as any personal property and general intangibles referenced in the Mortgage and other Loan Documents (the "**Property**") (See, e.g., Ex. 3, Mortgage).

**B. Events of Default under the Loan Documents**

19.     Pursuant to the Loan Documents, Defendant covenanted to "achieve, complete

---

equipment leases and installment sale agreements and any and all agreements of sale (collectively, the "**Agreements**").

(Ex. 6, Construction Agreement Assignment at § 1).

[2] Exs. 1 - 8 are sometimes referred to collectively as the "**Loan Documents**."

6

and perform each other Milestone by the applicable Milestone Date therefor." Ex. 1, Loan Agreement at § 6.1(b).

20.     "Milestones" is defined as "those certain events and actions set forth on Exhibit G to be completed and performed by the Milestone Dates." *Id.* at § 1.1.

21.     "Milestone Dates" means "the specific dates by which the Milestones must be completed and performed, as set forth on Exhibit G." *Id.*

22.     Borrower further covenanted that Borrower would "cause the Property to be maintained and operated in a good and safe condition and repair and in keeping with the condition and repair of properties of a similar use, value, age, nature, and construction." (Ex. 3, Mortgage at § 3.4).

23.     Borrower additionally agreed that, if a claim of lien was served upon Borrower, Borrower was required to, within thirty (30) calendar days of Borrower's receipt of same:

> (i) pay and discharge the claim of lien or bonded stop notice; (ii) effect the release thereof by recording or delivering to Lender a surety bond, or escrowing a cash equivalent, in sufficient form and amount; or (iii) provide Lender with other assurances which Lender deems, in its sole discretion, to be satisfactory for the payment of such claim of lien or bonded stop notice and for the full and continuous protection of Lender form the effect of such lien or bonded stop notice.

(Ex. 1, Loan Agreement at § 6.13(a)).

24.     Pursuant to the Construction Agreement Assignment, Defendant agreed that Plaintiff would "fulfill and perform each and every term, covenant and provision of the Agreements and Permits to be fulfilled or performed by Assignor thereunder[.]" (Ex. 6, Construction Agreement Assignment at § 3).

7

25.     The Loan Documents define events of default, which include, without limitation:

- Failure to "perform or observe any term, covenant or agreement contained in this Agreement or any other Loan Documents within the time period provided in this Agreement or any applicable Loan Document (other than any term, covenant or agreement otherwise addressed in another paragraph of this Section 10.1)." (Ex. 1, Loan Agreement at § 10.1(c))

- Failure "to achieve any of the Milestones by the applicable Milestone Date[.]" (*Id.* at § 10.1(m))

- Failure to "pay or discharge, effect a release or provide assurance with respect [to] any claim of lien within ten (10) Business Days after notice of such lien[.]" (*Id.* at § 10.1(r)(i)).

**C. Defendant's Defaults**

26.     After Plaintiff and Defendant entered into the Loan Agreement and corresponding Loan Documents, Defendant failed to meet its obligations described therein.

**1.      Defendant Failed to Meet the Milestone Dates**

27.     Defendant failed to achieve the Milestones by the applicable Milestone Dates.

28.     Defendant's failure to meet Milestone Dates has caused financial damages both in terms of delay damages and increased cost to complete the construction project.

29.     Specifically, pursuant to the Reinstatement, Defendant was required to complete the following Milestones by the applicable Milestone Dates:

- Building Frame:                  April 22, 2016

- MEP Rough-Ins:                 July 7, 2016

- Building Enclosure:             July 1, 2016

- Parking Lot and Site Concrete:     September 26, 2016

8

(Ex. 1, Reinstatement, at Exhibit G).

30.     As of June 2016, Defendant had still failed to complete the Building Framing.

31.     In an effort to accommodate Defendant and move the project forward, on June 2, 2016, Plaintiff entered into the Fourth Amendment with Defendant to extend the Milestone Date for Building Framing to July 15, 2016. (Ex. 1, Fourth Amendment at § 1(a)).

32.     As noted, however, as of July 2016, Defendant had failed to complete the Building Framing, MEP Rough-Ins, and Building Enclosure.

33.     In a final effort to get construction back on track, on July 15, 2016, Plaintiff entered into the Fifth Amendment with Defendant to extend the Milestone Dates as follows:

- Building Framing:          August 26, 2016

- MEP Rough-Ins:          August 26, 2016

- Building Enclosure:          August 26, 2016

(Ex. 1, Fifth Amendment at § 1).

34.     Despite receiving the several noted extensions of the Milestone Dates, Defendant again failed to complete the Building Framing, MEP Rough-Ins, and Building Enclosure by August 26, 2016.

35.     Accordingly, on August 26, 2016, Plaintiff sent to Defendant a Notice of Event of Default, notifying Defendant that it had failed to complete Building Framing, MEP Rough-Ins, and Building Enclosure by August 26, 2016, as required under the Fifth Amendment. (**Ex 10**,

9

Notice of Event of Default at p. 1).

36.     Consistent with its failure to meet construction Milestones and other obligations, Defendant failed to complete the Parking Lot and Site Concrete by September 26, 2016, as required under the Reinstatement.

37.     Accordingly, on September 29, 2016, Plaintiff further notified Defendant that its failure to complete the Parking Lot and Site Concrete by September 26, 2016 constituted an additional event of default.  (**Ex 11**, Letter, dated September 29, 2016).

38.     Further, under Section 6.1(b) and Exhibit G of the Loan Agreement, Borrower was required by October 20, 2016, to complete the Interior Finishes.   Borrower failed to complete the Interior Finishes by October 20, 2016, as required.

39.     As described above, Defendant's many breaches, including particularly its failure to meet the Milestones by the Milestone Dates, constitute events of default under the terms of the Loan Documents. (Ex. 1, Loan Agreement at § 10.1(m)).

40.     Plaintiff has already suffered and will continue to suffered damages as a result of Defendant's events of default, including without limitation, delay damages in the form of lost income due to the delay of the completion of construction in an estimated amount of $5,270,083 in gross residential income plus $776,338 in gross retail income.   (Ex. 1, Loan Agreement, Exhibit B6).

41.     Plaintiff has already suffered and will continue to suffer additional damages as a result of Defendant's events of default, including without limitation, increased cost to complete construction.   As of the filing of this Complaint, Plaintiff estimates that the cost to complete

10

construction is at least $18,639,309.45, which is significantly over budget. (Cost to Complete Summary, **Ex. 12**).

### 2. Defendant Failed to Meet Its Obligation to Avoid and/or Resolve Liens Recorded on the Property

42. In addition to its failure to meet Milestone Dates and other defaults noted above, Defendant also defaulted under the Loan Documents by failing to meet its obligation to avoid or resolve any construction liens recorded against the Property.

43. Upon information and belief, on September 29, 2016, Gaylor recorded a claim of lien in the Washtenaw County Records, claiming a construction lien on the Property in the amount of $916,312.91 (the "**Gaylor Lien**").

44. Similarly, upon information and belief, on October 6, 2016, Jermor recorded a claim of lien in the Washtenaw County Records, claiming a construction lien on the Property in the amount of $330,958.06 (the "**Jermor Lien**").

45. On October 18, 2016, Plaintiff notified Defendant of the Gaylor and Jermor Liens, and demanded that Defendant satisfy its obligations pursuant to Section 6.13(a) of the Loan Agreement. (Ex. 1).

46. To date, Defendant has failed to obtain a discharge of either the Gaylor Lien or Jermor Lien and Plaintiff reasonably believes that Defendant will not do so.

### 3. Defendant Failed to Maintain the Property as Required by the Loan Documents

47. Moreover, Hourglass Assessment Group Construction Consultants inspected Packard Square on September 15, 2016, and observed the following conditions:

11

a. The roof has not been completed. The coping and waterproofing work, which is contingent upon a completed façade, has not commenced. Roof drains have not been tied into the main storm system. The roof drains are temporarily routed through open windows. Flashing and caulking have not been completed. Open windows and the likely failure of this temporary system in freezing temperatures will lead to water infiltration and ultimately interior system failures.

b. The Building's envelope is not watertight or fully enclosed. More specifically, the Building's façade, roof, terraces, and mechanical openings have not been completed. Prolonged weather exposure will lead to exterior and interior system failures.

c. The majority of the ground floor remains open to the elements, and approximately 25 percent of the windows and doors for the Building have not been installed. Flashing and caulking have not been completed. This will allow exposure to unfavorable winter weather condition, as well as allow for unauthorized access and trespass into the Building, which poses safety issues. Storefront systems, windows, and doors were not installed at the majority of the ground floor of the Building, allowing exposure to weather – rain, wind, and snow. Prolonged weather exposure will lead to interior system failures.

d. The site remains incomplete and the soil is bare, not stabilized and unprotected. The construction site is not prepared for the erosive impact of winter storms on the exposed, disturbed ground. Given these conditions, emergency vehicle access is limited, and improper drainage, and soil erosion will occur. The completion work on all bare areas must be immediately commenced, or at a minimum, covered with straw, mulch, erosion control blankets, or other suitable erosion prevention measures. Emergency vehicle entry path and means of access must be put in place.

e. With the exception of temporary power, all utilities and mechanical systems are incomplete. The pad mounted transformer was observed along with exterior piping for the gas meters, but not operating.

f. The structural remediation work has not been completed within the "retail section" of the Building. Severe settlement may occur if this work is not completed and snow loads could potentially increase and accelerate settlement of the structure and work in this section. Thus, it is absolutely imperative that these conditions be addressed prior to winter weather.

g.  Along the south perimeter of the site, various construction building materials are stored in the open and exposed to the elements. These include storm drainage materials, cement panels, vinyl siding, doors, windows, roofing materials, plumbing materials, electrical materials, and related building materials. The materials are so numerous that I could not inventory them within the time allowed.

h.  Various building materials have been stored throughout the Building. Those materials include insulation, sheetrock, electrical wire, boxes, and unit panels, plumbing material and limited fixtures, and related building materials.

i.  The concrete slabs on grade for the retail units and the parking garage is not installed. Having bare soil in these locations throughout the winter and spring could create freeze and thaw conditions as well as create erosion at the substructure of the building. Water infiltration will potentially erode the foundations and put the structural integrity of the building at risk. (Affidavit of Tina Van Curen, **Ex. 13**).

48.  In lieu of immediately filing an action to enforce its rights following Defendant's defaults, and without waiving any of its rights or remedies under the Loan Documents or otherwise, Plaintiff attempted to reach a resolution with Defendant with respect to these matters.

49.  The parties, however, were unable to reach a resolution at their meeting yesterday, October 20, 2016.

### 4.  Defendant Failed to Meet Its Obligations Under the Construction Agreement

50.  Specifically, Defendant has repeatedly failed to meet the Milestones as of the applicable Milestone Dates, egregiously delaying completion of construction, which now appears to be at least 10-12 months behind schedule. Additionally, Defendant has mismanaged the general contractor by interfering with the sequencing of construction, failing to pay obligations under the Construction Agreement when due, and generally obstructing the efficient progress of construction, among other things. Defendant's incompetence and management has caused

13

significant delays, resulted in numerous change orders that have caused the construction project to become significantly over-budget, and allowed the recording of construction liens on the Property.

51.     For example, in or about July 21, 2016, Plaintiff received notice from the general contractor, Quandel Construction Group, Inc. ("**Quandel**"), that Defendant had failed to make certain payments under the Construction Agreement relating to drywall costs, construction manager's fees and general conditions. In the July 21st letter, Quandel advised that Defendant's actions constituted a breach of the Construction Agreement and that, absent payment, Quandel would potentially stop work.

52.     On July 22, 2016, Plaintiff notified Defendant that withholding payment from Quandel in breach of the Construction Agreement constituted a breach of the Construction Agreement Assignment and an event of default under the Loan Documents (the "**First Quandel Notice**"). (First Quandel Notice at p. 1, **Ex 14**).

53.     Notwithstanding the First Quandel Notice, Defendant failed to cure its default under the Construction Agreement and otherwise resolve Defendant's disputes with Quandel necessitating a second letter from Plaintiff to Defendant dated August 9, 2016. (the "**Second Quandel Notice**", **Ex. 15**) (collectively, the "**Quandel Dispute**").

54.     In response to the Second Quandel Notice, Defendant, again, failed to cure its default. Indeed, the Quandel Dispute has continued to date.

55.     Additionally, in June 2016, Quandel requested that Defendant provide updated design plans and specifications. (**Ex. 16**, Letter from Quandel Dated October 13, 2016).

14

56.     After Defendant failed to comply, Quandel renewed its request on August 5, 2016, and Quandel specifically informed Defendant that the failure to meet the request prohibited Quandel and its subcontractors from moving forward with construction and from obtaining necessary government approvals. (*Id.*).

57.     As such, certain government approvals remain outstanding. (*Id.*).

58.     Further, after Defendant altered the project and approved designs and/or specifications multiple times, Quandel was required to submit a number of proposed change orders reflecting increased costs and schedule impacts. (*Id.*).

59.     Defendant refused to adhere to the change-order process, and has otherwise refused to approve contractually agreed upon fees. (*Id.*).

60.     Similarly, Defendant withheld consent on a number of occasions which would allow Quandel to hire subcontractors to complete the necessary construction. (*Id.*).

61.     Quandel alleged a number of other grievances and contractual violations against Defendant, including non-payment, Defendant's failure to demonstrate ability to pay, and Defendant's disruption and interference with the construction project. (*Id.*).

62.     Defendant's disputes with Quandel have jeopardized the completion of construction. Indeed, after Defendant noticed the termination of the Construction Agreement with Quandel on October 18, 2016 (upon information and belief) earlier this week, Quandel disputed Defendant's attempted termination.

**D. Plaintiff's Contractual Right, and Defendant's Consent, to Appointment of Receiver**

15

63.     Pursuant to the Mortgage, upon the occurrence of any event of default, Plaintiff is entitled to exercise and pursue all of its rights and remedies in the Mortgage and other Loan Documents which include, without limitation, that Plaintiff is "entitled to the appointment of a receiver for all or any part of the Property . . . ." (Ex. 3, Mortgage at § 9.3).

64.     Furthermore, as agreed upon by the parties to the Mortgage, Defendant expressly and unequivocally consented to the appointment of a receiver to take possession of the Property in the event of default, such as the defaults described herein. Specifically, the Mortgage provides, in part, as follows, "[Defendant] does hereby consent to the appointment of such receiver or receivers, waives any and all notices of . . . and defenses to such appointment and agrees not to oppose any application therefor by [Plaintiff]." (*Id.*)

65.     Pursuant to §9.1(a) of the Mortgage, §10.2(a) of the Loan Agreement, and §2.11 of the Note, and due to the many events of default of Defendants, on October 21, 2016, Plaintiff accelerated the indebtedness under the Loan Documents. Defendant owes Plaintiff the principal loan amount of $34,091,501.14 together with interest which has accrued and shall continue to accrue thereon, plus fees, costs, and expenses incurred and to be incurred by Plaintiff.

## COUNT I – APPOINTMENT OF RECEIVER

66.     Plaintiff incorporates by reference the preceding allegations as if fully restated herein.

67.     This action seeks the appointment of a receiver pursuant to MCL 600.2927 and MCL 570.1122.

68.     As described herein, Defendant has failed or neglected to complete construction

16

of the improvements on the Property, which will result in diminution in value and create a risk to the public if the construction on the Property remains incomplete. In addition, the failure of Defendant to complete construction of the improvements to the Property as set forth herein and to pay the immediate expenses necessary to preserve the value of that Property constitutes waste.

69. Furthermore, Defendant has failed to maintain the Property as required under the Loan Documents as noted, in part, in Section 3 above.

70. Moreover, pursuant to the Mortgage, Defendant has expressly consented to the appointment of a receiver upon the occurrence of an event of default. (Ex. 3, Mortgage at § 9.3).

71. In addition, MCL 570.1122(1) authorizes this Court to appoint a receiver to take possession of mortgaged real property (a) which secures the outstanding debt, (b) on which incomplete improvements exist, and (c) as to which the mortgagee is likely to sustain substantial loss if the improvement is not completed.

72. MCL 570.1123(1) authorizes a receiver to borrow money to complete construction, to sell such property when finished, and to distribute the proceeds of sale to the parties in accord with the priority of their interests.

73. Plaintiff will suffer irrevocable loss and irreparable harm by substantial deterioration in the value of this important piece of collateral unless a receiver is appointed to manage, operate, maintain, control and protect the Property, to cause the payment of necessary expenses for the completion of improvements, maintenance, utilities, taxes and insurance, and generally to preserve and protect the Property and Plaintiff's mortgagee lien interest.

74. All parties having an interest in this property will suffer irreparable loss unless a

17

receiver is appointed who is authorized to borrow money to pay necessary expenses and costs immediately to complete construction of and to market the Property.

WHEREFORE, Plaintiff requests that the Court enter an order appointing a receiver over the Property pursuant to the provisions of the Mortgage, MCL 600.2927 and MCL 570.1122, *et seq.,* for the purpose of preserving the Property and preventing waste, completing construction, potentially marketing and selling the Property, and otherwise acting to safeguard, to the extent reasonably possible, the interests of Plaintiff and other interested parties. Plaintiff requests this Court also grant it such other and further equitable relief as shall seem mete and just under the circumstances. Plaintiff requests this Court also grant it such other and further relief as shall seem equitable and just under the circumstances.

## COUNT II – FORECLOSURE OF MORTGAGE

75.     Plaintiff incorporates by reference the preceding allegations as if fully restated herein.

76.     Defendant is in default under the terms of the Loan Documents and Plaintiff has provided appropriate notice to Defendant of its events of default on numerous occasions.

77.     Notwithstanding such notice, Defendant has failed, refused or neglected to cure such events of default as required under the terms of the Loan Documents.

78.     Pursuant to the terms of the Loan Documents, the above noted defaults entitle Plaintiff to exercise any and all remedies available to it under the Loan Documents and under applicable law. Such remedies include, without limitation, the option to commence proceedings to foreclose the Mortgage under Section 9.1.

18

79. Pursuant to such provision in the Mortgage, and by reason of the above-described defaults, Plaintiff has elected to foreclose the Mortgage in the order and manner proscribed by this Court pursuant to an appropriate Judgment of Foreclosure.

80. Based upon its knowledge of title, and its ongoing diligent search of title, Plaintiff has joined as Additional Defendants to this suit all those persons and entities whose interests appear of record or whose interests Plaintiff is otherwise aware of and whose interests will be extinguished or otherwise adversely affected by foreclosure of the Mortgage sought in this count. As supplemental title search reports are issued, in the event it appears necessary to join additional persons and entities whose interests appear of record, Plaintiff will request leave of this Court to join such additional parties, if any.

81. As noted, the total principal amount Defendant owes to the Plaintiff under the Note as of October 20, 2016 is $34,091,501.14 together with interest which has accrued and shall continue to accrue thereon, plus fees, costs, and expenses incurred and to be incurred by Plaintiff in collection thereof.

82. No other action has been brought to recover all or any part of the debt secured by the Mortgage, and no part of the amount owed has been collected or paid.

WHEREFORE, Plaintiff requests this Court to award the following relief:

a) At the appropriate time, order that the Property be sold at public sale to the highest bidder pursuant to the applicable statutes and Michigan Court Rules to satisfy, in whole or in part, the debt and lien of the Mortgage, together with interest thereon and the costs and expenses of suit, including reasonable attorneys' fees and other costs sustained in this action;

b) Order the net proceeds realized from such public sale to be paid over to Chase in satisfaction, or in partial satisfaction, of the total indebtedness due to Chase, with

19

any surplus realized therefrom to be disposed of and distributed as the Court may direct;

c) To grant to Plaintiff such other relief as this Court may deem equitable and just.

**VERIFICATION**

I declare that the above statements are true to the best of my knowledge, information and belief, under penalty of perjury.

CAN IV Packard Square LLC

By: _Gerald Goldman_

Gerald Goldman
Managing Director

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California          )

County of _Los Angeles_      )

On October _21_, 2016 before me, _Alexandra L. Smith, Notary Public_,
<span style="text-align:center">Here Insert Name and Title of the Officer</span>
personally appeared Gerald Goldman, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


ALEXANDRA L. SMITH
Commission # 2127125
Notary Public - California
Los Angeles County
My Comm. Expires Sep 18, 2019

Signature _Alexander S. Smith_
<span style="text-align:center">Signature of Notary Public</span>

(SEAL)

Troy 59196-1 1708098v1

Respectfully submitted,

DICKINSON WRIGHT PLLC

/s/ J. Benjamin Dolan
J. Benjamin Dolan (P47839)
James B. Cunningham (P63131)
Ariana F. Pellegrino (P79104)
*Attorneys for Plaintiff*
2600 W. Big Beaver Rd., Suite 300
Troy, Michigan 48084
(248) 433-7200
bdolan@dickinsonwright.com
jcunningham@dickinsonwright.com
apellegrino@dickinsonwright.com

Dated: October 21, 2016

DETROIT 59196-1 1404576v2

22

**STATE OF MICHIGAN**

**IN THE CIRCUIT COURT FOR THE COUNTY OF WASHTENAW**

CAN IV PACKARD SQUARE LLC
a Delaware limited liability company,

        Plaintiff,

v.

PACKARD SQUARE LLC, a
Michigan limited liability company,

        Defendant,
and

JERMOR PLUMBING & HEATING, INC.,
a Michigan corporation, and GAYLOR
ELECTRIC INC. a foreign corporation,

        Additional Lien Claimant Defendants.

Case No

Hon. Archie Brown

**BUSINESS COURT
ELIGIBLE**

---

DICKINSON WRIGHT PLLC
J. Benjamin Dolan (P47839)
James B. Cunningham (P63131)
Ariana F. Pellegrino (P79104)
*Attorneys for Plaintiffs*
2600 W. Big Beaver Rd., Suite 300
Troy, Michigan 48084
(248) 433-7200
bdolan@dickinsonwright.com
jcunningham@dickinsonwright.com
apellegrino@dickinsonwright.com

---

## INDEX OF EXHIBITS

1.     Exhibit 1     Loan Agreement

2.     Exhibit 2     Note

3.     Exhibit 3     Mortgage

4.     Exhibit 4     Assignment of Leases and Rents

5.  Exhibit 5        UCC Filings

6.  Exhibit 6        Construction Agreement Assignment

7.  Exhibit 7        Non-Recourse Carve-Out Guaranty

8.  Exhibit 8        Completion Guaranty

9.  Exhibit 9        Legal Description

10. Exhibit 10       Notice of Event of Default Dated August 26, 2016

11. Exhibit 11       Letter From Lender Dated September 29, 2016

12. Exhibit 12       Cost Summary

13. Exhibit 13       Affidavit of Tina Van Curen

14. Exhibit 14       First Quandel Notice Dated July 22, 2016

15. Exhibit 15       Second Quandel Notice Dated August 9, 2016

16. Exhibit 16       Letter From Quandel Dated October 13, 2016

DETROIT 59196-1 1404879v1