# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:                                          Case No. 17-52483

PACKARD SQUARE LLC,                              Chapter 11

         Debtor.                          Judge Thomas J. Tucker
_____/

## OPINION REGARDING DEBTOR'S TURNOVER MOTION AND SECURED CREDITOR'S CROSS-MOTION

## I. Introduction

This Chapter 11 case is before the Court on two competing motions: (1) the Debtor's motion entitled "First Day Emergency Motion for Order Directing Receiver to Turn Over All Property to Chapter 11 Debtor-in-Possession and Related Relief" (Docket # 8, the "Turnover Motion"); and (2) the motion filed by Debtor's pre-petition secured lender, CAN IV Packard Square LLC ("Canyon"), entitled "CAN IV Packard Square LLC'S Emergency Cross-Motion To: (1) Excuse Receiver from Turnover Provisions; and (2) Suspend the Bankruptcy Case" (Docket # 28, "Canyon's Cross-Motion").

In the Turnover Motion, the Debtor seeks an order under 11 U.S.C. § 543(b), requiring a state-court appointed receiver, who has been in place for over 10 months, to turn over all of the Debtor's property to the Debtor, and to file an accounting of the type described in § 543(b)(2). In Canyon's Cross-Motion, Canyon seeks an order under 11 U.S.C. § 543(d)(1), excusing the receiver from complying with the turnover and accounting provisions of § 543(b). Relatedly, Canyon also seeks an order under 11 U.S.C. §§ 305(a)(1) and 105(a), "suspending" this bankruptcy case.

The Debtor and Canyon each oppose the other's motion. And as detailed further in Part

IV of this opinion, several parties in interest have taken a position on these motions, with some supporting the Debtor's position and some supporting Canyon's position. The Court held a lengthy hearing on these motions on September 13, 2017.

Also on September 13, 2017, the Court held a hearing on a motion by the Debtor for approval of post-petition financing, entitled "First Day Emergency Motion of the Debtor for Entry of Interim and Final Orders (I) Authorizing Debtor to Obtain Post-Petition Financing, (II) Scheduling a Final Hearing, and (III) Granting Certain Related Relief" (Docket # 13, the "DIP Financing Motion"). The Court then held an evidentiary hearing on the DIP Financing Motion, on September 19 and 20, 2017. Today the Court has filed a separate written opinion regarding that motion. For the reasons explained in that opinion, the Court has just entered an order denying the DIP Financing Motion.

For the reasons stated in this opinion, the Court will deny the Debtor's Turnover Motion, grant Canyon's Cross-Motion, and dismiss this bankruptcy case.

## II. Jurisdiction

This Court has subject matter jurisdiction over this bankruptcy case and these contested matters under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a) (E.D. Mich.). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(E), and 157(b)(2)(O).

This proceeding also is "core" because it falls within the definition of a proceeding "arising under title 11" and of a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. § 1334(b). Matters falling within either of these categories in § 1334(b) are deemed to be core proceedings. *See Allard v. Coenen* (*In re Trans–Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009). This is a proceeding "arising under title 11" because it is "created or

2

determined by a statutory provision of title 11," *see id.*, including Bankruptcy Code §§ 543 and 305(a)(1). And this is a proceeding "arising in" a case under title 11, because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases." *See id.* at 27.

## III. Background

In its opinion filed today regarding the Debtor's DIP Financing Motion, the Court described at length the background and events leading to the Debtor's bankruptcy filing. Because that background also is relevant to the motions discussed in this opinion, the Court will quote at length from the "Background" section of its other opinion. (The following quotation omits all of the many record citations and the footnotes containing them):

### A. The Construction Loan

Pre-petition, in October 2014, the Debtor obtained a construction loan from Canyon in the maximum principal amount of $53,783,184,00 (the "Construction Loan") to finance the construction of "a 360,000 square foot mixed-use development [project] on a six and a half acre site on Packard Street in Ann Arbor, Michigan," including "249 residential units with high-end amenities, nearly 30,000 square feet of retail space and over 450 parking space[s] including an underground parking garage" (the "Project"). The Debtor signed a promissory note, and other loan documents, and granted Canyon a mortgage on the real property of the Project "together with the related easements, privileges and licenses, and the buildings, structures, improvements, fixtures and personal property located [on it]" to secure the Debtor's indebtedness for the Construction Loan. The Debtor also executed an assignment of leases and rents in favor of Canyon.

### B. The appointment of a receiver in the state court suit

On October 21, 2016, Canyon filed suit against the Debtor in Washtenaw County Circuit Court, in the case of *CAN IV Packard Square LLC v. Packard Square, LLC, et al.,* Case No. 16-000990 CB (the "state court case"). In its verified complaint in the state court case, Canyon requested the appointment of a

3

receiver over the property securing its debt, due to the Debtor's alleged failure "to fulfill its obligations to complete construction of improvements for which funds were provided in accordance with the relevant loan agreements" and "to maintain the [p]roperty is a suitable condition." Canyon also sought foreclosure of its mortgage in the state court complaint.

On October 27, 2016, the state court held a hearing in which it heard oral argument regarding the appointment of a receiver. Counsel for Canyon and counsel for the Debtor both appeared at the hearing and argued their respective positions at length, for and against the appointment of a receiver. During the hearing, Canyon alleged, in relevant part, that there had been multiple material defaults by the Debtor, in the form of missing critical construction milestone dates under the terms of the Construction Loan and the mortgage, despite Canyon having granted some extensions of those dates. Canyon alleged that, among other defaults, the Debtor had defaulted by missing the "substantial completion date which was October 25[, 2016]," and that the Debtor had defaulted on its obligation to enclose the building of the Project by July 1, 2016, which was "a critically important aspect of the [construction] schedule" to avoid damage to the building, from the inclement weather that had already occurred and that would be getting worse due to the approaching winter season. Canyon alleged that although it had worked with the Debtor and extended the original contractually-agreed date of July 1, 2016 to August 26, 2017, the Debtor had also defaulted on its promise to enclose the building by the extended date. According to Canyon, that default still had not been cured, and the building was "still open and exposed to the elements" at the time of the hearing. Canyon also alleged that Gaylor Electric Inc. d/b/a Gaylor, Inc. ("Gaylor") and Jermor Plumbing & Heating, Inc. ("Jermor"), two subcontractors who had worked on the Project but had not been paid, had recorded construction liens against the property subject to its mortgage, and that more liens would soon be filed based on the Debtor's firing of Quandel Construction Group, Inc. ("Quandel"), the former general contractor for the Project. Canyon informed the Court that due to the Debtor's defaults, it had accelerated the promissory note and so the promissory note was due and owing in full. Canyon argued that "under either the [parties'] contract or the Construction Lien Act, the [c]ourt was authorized to appoint a receiver under the current existing circumstances" because the Project was only partially completed;

4

the Debtor had defaulted on its obligations under its contract with Canyon; and the building was not enclosed and at risk of being damaged.

The Debtor argued that although there had been "technical defaults" due to missed construction milestone dates, the Debtor was entitled to an extension of the construction milestone dates of "up to 150 days" due to the force majeure clause in the parties' loan agreement. Debtor also argued that the "fundamental equities" of the case favored denying Canyon's request for the appointment of a receiver.

At the conclusion of the hearing, the state court gave a bench opinion in which it rejected the Debtor's arguments and ruled that it would "appoint McKinley, Incorporated ["McKinley"] as receiver for the [P]roject and that that [would] be done immediately." On November 1, 2006, the state court entered an order appointing McKinley as the receiver (the "Receivership Order").

In the Receivership Order, the state court made the following findings, among others:

> C. [Debtor] has defaulted in the performance of its obligations under the Loan Documents identified and defined in the Complaint and [Canyon] has provided notice of such default.
>
> D. Further, [Debtor] has failed or refused to pay necessary and immediate expenses to preserve and protect the Property, all of which constitutes waste and which jeopardizes the security interest of [Canyon] and other parties having an interest in the Property. In this circumstance, MCL 600.2927 as well as the provisions of the Loan Documents authorize this Court to appoint a receiver.

5

E. Additionally, the requirements under MCL 570.1122(1) are met in this case, namely:

(I) The improvements and construction to the Property are incomplete;

(ii) The Indebtedness due [Canyon] secured by the Mortgage is in default, and, therefore, the Mortgage is in default; and

(iii) [Canyon], the mortgagee, is likely to sustain substantial loss, if the improvements to the Property are not completed.

## C.  Terms of the Receivership Order, and the receivership loan

At the time of the Receiver's appointment, the Debtor estimates that the Project was about 65% complete.  Canyon presented credible evidence, however, that at that time the Project was only about 50% completed, and needed reworking of some of the work that had been done.  In any case, the Receivership Order gave the Receiver broad authority over the Debtor's property and the Project, the purpose of which was "to protect the interests of all interested parties in the Property."  The Order gave the Receiver authority and direction not only to protect and preserve the Property, but also to complete construction of the Project:

[T]he Receiver is authorized and directed to take immediate possession and full control of the Receivership Property and to take any and all necessary and appropriate action to effectuate his possession and sole control over same in order to prevent waste and to preserve, secure, safeguard, **winterize and complete construction of the Receivership Property**.

To this end, the Receivership Order authorized the Receiver to "immediately enter into a loan agreement with [Canyon] to borrow funds to winterize, safeguard, and complete construction of

6

the Receivership Property and to lease and potentially sell such property, in accord with the terms of MCL 570.1122, *et seq.*" The Order authorized the Receiver to borrow up to $19.7 million from Canyon "to, among other things, winterize, safeguard and complete construction of the Receivership Property." Such loan was to be "subject to terms acceptable to [Canyon] and upon the approval of the Court," and was to be secured by a "super priority" lien, "senior to all other liens," on the Receivership Property.

Shortly after its appointment, the Receiver and Canyon jointly sought the state court's approval of proposed loan documents for the Receivership Loan. The Debtor objected, and the state court held a hearing on November 17, 2016, during which the court heard arguments and then granted the joint motion to approve the loan documents. Thereafter, the Receiver and Canyon entered into the Receivership Loan, in a loan agreement dated as of November 22, 2016 and related documents.

**D. Pre-petition activity under the state court receivership**

During the more than 10-month period after the state court appointed the Receiver and before the Debtor filed this bankruptcy case, there was considerable activity on the Project by the Receiver and its chosen general contractor on the project, O'Brien Construction Company, Inc. And there was a great deal of litigation in the state court case, between the Debtor and some of the construction lien holders on the one hand, and the Receiver and Canyon on the other hand.

The state court case has been contentious. For example, almost immediately after appointment of the Receiver, the Debtor appealed the Receivership appointment and sought a stay pending appeal. The Debtor also sought an order requiring the Receiver to use the Debtor's preferred general contractor at the time, C.E. Gleeson Constructors, Inc., in place of the Receiver's chosen contractor O'Brien. [Footnote: Quandel Construction Group, Inc. had been the Debtor's general contractor on the Project, but disputes between the Debtor and Quandel led the Debtor to terminate Quandel, effective October 17, 2016.] The state court heard these motions on November 17, 2016, and denied them. The Debtor then filed a motion for reconsideration of the Receivership order on December 8, 2016, which the state court denied on December 19, 2016. The Debtor appealed the Receivership order

7

to the Michigan Court of Appeals, where the appeal remains pending. The Debtor thereafter filed various oppositions and/or objections against the Receiver in the state court. The state court litigation has also included various motions and objections filed by some of the creditors claiming construction liens predating the receivership. This includes motions by Gaylor Electric, Inc. ("Gaylor") and Quandel seeking relief from, and amendment of, the Receivership Order, a motion by Gaylor for leave to file a complaint against the Receiver for claimed breaches of fiduciary duty, and objections by Gaylor and Quandel to reports of the Receiver. [Footnote: The motions by Gaylor and Quandel were concurred in by two other construction lien claimants, Amthor Steel and Zeeland Lumber and Supply Co.] These matters were heard by the state court on June 22, 2017, and the Gaylor and Quandel motions were denied and their objections were overruled.

Most recently in the state court case, on August 31, 2017, the Receiver and Canyon filed a joint motion seeking to increase the total amount of the Receivership Loan that the Receiver is authorized to borrow, in order to complete the Project. In round numbers, the motion sought to increase the maximum borrowing amount from the original maximum of $19.7 million (approved in November 2016) to $37.5 million, an increase of $17.8 million. The motion alleged, among other things, that: (1) "[s]ince entry of the Receivership Order, the Receiver has dutifully executed his obligations and has taken all necessary steps to complete the Project," and to date, had incurred costs of $8.9 million; (2) the remaining undrawn amount of the original $19.7 million Receivership Loan was insufficient to complete construction of the Project; (3) the original $19.7 million loan authorization had been based on the Debtor's budget, which had proven inadequate and unrealistic; and (4) the costs to complete the Project were significantly higher because of deficient work done by the Debtor and other specified problems caused by the Debtor.

The joint motion was noticed for a hearing that was to have occurred in the state court on September 7, 2017. The hearing did not occur, however, because the Debtor filed this bankruptcy case two days before the hearing.[1]

## IV. Proceedings on the motions in this bankruptcy case

---

[1] Opinion Regarding Debtor's Post-Petition Financing Motion (Docket # 142) at 2-10.

The Debtor filed a voluntary petition for relief under Chapter 11 commencing this case on September 5, 2017. This was more than 10 months after the state court appointed the Receiver.

As noted in Part I of this opinion, several parties in interest other than the Debtor and Canyon have taken a position on the Turnover Motion and Canyon's Cross-Motion. Prior to the September 13, 2017 hearing on the motions, the following parties filed timely written responses that supported the Debtor's position.[2] All of these are creditors who claim to have a construction lien for work/labor done or materials provided for the Project before the Receiver was appointed:

- Quandel Construction Group, Inc. ("Quandel")

- Gaylor Electric, Inc. ("Gaylor")

- Zeeland Lumber & Supply Co.

- E.L. Painting Co.

- Amthor Steel

The following parties filed timely written responses that supported Canyon's position.[3] With the exception of the first of these parties listed below, these parties consist of the Receiver, the Receiver's general contractor, and subcontractors working with the Receiver's general contractor:

- Georgetown of Ann Arbor Condominium Association

- Solar Contract Carpet, Inc.

- Starkey's Construction, Inc.

---

[2] The written responses of these parties, to one or both of the motions, are on file at Docket ## 47, 54, 55, 56, 62, 63, 79, 83, and 88.

[3] The written responses of these parties, to one or both of the motions, are on file at Docket ## 40, 43, 71, 74, 76, 77, and 82.

9

- McKinley, Inc. (the state court Receiver)

- O'Brien Construction Co. (the state court Receiver's general contractor)

- Wolff Networks, LLC

During the September 13, 2017 hearing, the Court heard oral argument from the Debtor, Canyon, and all of the parties listed above except Solar Contract Carpet, Inc. and Starkey's Construction, Inc., who did not appear at the hearing.[4]

In addition, while the United States Trustee did not file a written response to the motions, he did appear at the hearing, through counsel. The United States Trustee took no position as to whether the Court should excuse the Receiver from the § 543(b) turnover obligation, but argued that if the Court does excuse such turnover, the Court should either dismiss this case or convert this case to Chapter 7, rather than suspending the case, because suspension is "not going to work in this case." (As to the question of suspension versus dismissal under § 305(a)(1), Canyon's Cross-Motion requested suspension. But Canyon's counsel had stated earlier during the hearing that if the Court decides to excuse turnover by the Receiver, and decides to abstain under § 305(a)(1), Canyon seeks dismissal *or* suspension.)

Confirming action taken during the hearing, the Court entered an order on September 14, 2017 which, in relevant part, required Canyon, no later than September 18, 2017, to:

> file, as supplemental exhibits regarding the Motions, all of the following:
>
> a. the current docket sheet for the state court receivership case (*CAN IV Packard Square LLC v. Packard Square, LLC, et al.*,

---

[4] The Court also heard from counsel for the law firm Kitch Drutchas Wagner Valitutti & Sherbrook, an unsecured creditor who did not file a written response to the motions, but who expressed support for the Debtor's position.

10

Case No. 16-000990 CB (Washtenaw County Circuit Court) (the "state court case");

b. a transcript of every hearing held in the state court case (except for the transcript of the October 27, 2016 hearing, which is already filed in this case, at Docket # 28, Exhibit B); and

c. a copy of the motions filed in May or June 2016 by Gaylor Electric, Inc. and by Quandel Construction Group, Inc. seeking to sue the Receiver for breach of fiduciary duties and other relief.[5]

The Order also stated:

After the items listed in paragraph 1 above have been filed, the Court will decide whether an evidentiary hearing on the Motions is necessary, and if so, the Court will enter an order scheduling such evidentiary hearing. If the Court decides that an evidentiary hearing is not necessary, the Court will decide the Motions without holding an evidentiary hearing, by filing a written opinion/order.[6]

Canyon filed the documents required by the Court's September 14 Order.[7]

_____

[5] Docket # 96 at ¶ 1.

[6] *Id.* at ¶ 2.

[7] Docket # 103, 109.  The documents Canyon filed at Docket # 103 from the state court case were as follows:

Exhibit 1 –     Docket Sheet from State Court

Exhibit 2 –     Transcript of November 17, 2016 State Court hearing re:

  (1)     Defendant's Emergency Motion for Stay Pending Appeal;

  (2)     Defendant's Emergency Motion to Direct Receiver to Resume Use of C.E. Gleeson Contractor and/or Enter Order Returning Control of Project to Defendant;

  (3)     Receiver's Motion for Entry of Order Approving Receivership Loan Documents;

  (4)     Receiver's Motion to Approve Budget.

Exhibit 3 –     Transcript of December 15, 2016 State Court hearing re:

|  | (1) | Defendant's Motion to Direct Receiver or Plaintiff |
|---|---|---|

Exhibit 4 –    Transcript of January 19, 2017 State Court hearing re:

              (1)      Defendant's Objection to Receiver's Draw Request

Exhibit 5 –    Transcript of March 16, 2017 State Court hearing re:

              (1)      Defendant's Objections to Receiver Reports

              (2)      Receiver's Motion to Approve Supplemental Budget

Exhibit 6 –    Transcript of April 13, 2017 State Court hearing re:

              (1)      Canyon's Motion for Protective Order

Exhibit 7 –    Transcript of June 22, 2017 State Court hearing re:

              (1)      Gaylord's Motion for Leave to File Third-Party Complaint Against Receiver;

              (2)      Gaylord's Motion to Amend Receivership Order;

              (3)      Gaylord's Objections to Receiver Reports;

              (4)      Quandel's Objections to Receiver Reports;

              (5)      Quandel's Motion for Relief from Receivership Order;

              (6)      Concurrences filed by Amthor Steel and Zeeland Lumber.

Exhibit 8 –    Transcript of August 17, 2017 State Court hearing re:

              (1) D&V Excavation's Motion for Summary Disposition Regarding Defendant's Cross-Claim Against D&V.

The documents Canyon filed at Docket # 109 regarding the state court action were as follows:

Exhibit 1 –    Gaylor Electric Inc.'s Motion for Leave to File

## V. Discussion

### A. The relief requested in the Motions

In the Turnover Motion, the Debtor asks the Court to order the Receiver McKinley to immediately comply with §§ 543(b)(1) and (b)(2) of the Bankruptcy Code, by turning over and accounting for all of the Debtor's property now in McKinley's possession, custody, or control.

In Canyon's Cross-Motion, Canyon, relying on § 543(d)(1) of the Bankruptcy Code, asks

_____

|  |  |
|---|---|
| | Third-Party Complaint Against Receiver and To Amend Order Appointing Receiver; |
| Exhibit 2 – | Gaylor Electric Inc.'s Objection to Packard Square Monthly Receiver Report Dated May 22, 2017, and Supplemental Brief in Support of Motion to Amend Receivership Order and/or File a Third-Party Complaint Against the Receiver; |
| Exhibit 3 – | Quandel Construction Group Inc.'s Motion for Partial Relief From Order Appointing Receiver and Order Approving Receivership Loan Documents; |
| Exhibit 4 – | Amthor Steel's Concurrence to Gaylor Electric Inc.'s Motion for Leave to File Third-Party Complaint Against Receiver and To Amend the Order Appointing Receiver; |
| Exhibit 5 – | Zeeland Lumber and Supply Co.'s Concurrence with Objections and Motions Regarding Receiver Conduct; |
| Exhibit 6 – | Gaylor Electric Inc.'s Objection to Packard Square Monthly Receiver Report Dated April 21, 2017; |
| Exhibit 7 – | June 22, 2017 Order Denying Gaylor Electric Inc.'s Motion to Amend Receivership Order and/or File a Third-Party Complaint Against the Receiver and Granting Costs in Favor of Receiver; |
| Exhibit 8 – | June 23, 2017 Order Denying Quandel's Motion for Partial Relief From Order Appointing Receiver and Order Approving Receivership Loan Documents; [and] |
| Exhibit 9 – | June 22, 2017 Order Denying Objections to Receiver Reports. |

13

the Court to excuse McKinley from complying with the normal turnover and accounting obligations under §§ 543(b)(1) and (b)(2). Canyon's Cross-Motion also asks the Court to "suspend" this bankruptcy case under §§ 305(a)(1) and 105(a) of the Bankruptcy Code, and to allow McKinley "to continue to act under the continued supervision of the [s]tate [c]ourt, so as to avoid the unnecessary expense and delay which will otherwise be generated by the bankruptcy proceedings and to avoid any future confusion as [to] which court's supervision the Receiver will act under."[8]

## B. Applicable provisions of the Bankruptcy Code

## 1. Section 543

Section 543 of the Bankruptcy Code states:

> (a) A custodian with knowledge of the commencement of a case under this title concerning the debtor may not make any disbursement from, or take any action in the administration of, property of the debtor, proceeds, product, offspring, rents, or profits of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property.
>
> (b) A custodian shall--
>
> > (1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and
> >
> > (2) file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property, that, at any time, came into the

---

[8] Docket # 28 at 17.

possession, custody, or control of such custodian.

(c) The court, after notice and a hearing, shall--

> (1) protect all entities to which a custodian has become obligated with respect to such property or proceeds, product, offspring, rents, or profits of such property;

> (2) provide for the payment of reasonable compensation for services rendered and costs and expenses incurred by such custodian; and

> (3) surcharge such custodian, other than an assignee for the benefit of the debtor's creditors that was appointed or took possession more than 120 days before the date of the filing of the petition, for any improper or excessive disbursement, other than a disbursement that has been made in accordance with applicable law or that has been approved, after notice and a hearing, by a court of competent jurisdiction before the commencement of the case under this title.

(d) After notice and hearing, the bankruptcy court–

> (1) may excuse compliance with subsection (a), (b), or (c) of this section if the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property, and

> (2) shall excuse compliance with subsections (a) and (b)(1) of this section if the custodian is an assignee for the benefit of the debtor's creditors that was appointed or took possession more than 120 days before the date of the filing of the petition, unless compliance with such subsections is necessary to prevent fraud or injustice.

11 U.S.C. § 543.

The obligation of a custodian to turn over property of the debtor to the "trustee," upon

15

learning of the commencement of a bankruptcy case by the debtor, also requires a custodian to turn over such property to a debtor-in-possession in a Chapter 11 case, where a trustee has not been appointed. *See* 11 U.S.C. § 1107(a). And the parties agree that a state court receiver is a "custodian" within the meaning of 11 U.S.C. § 543. *See* 11 U.S.C. § 101(11)(A) ("The term 'custodian' means . . . receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title[.]"); *In re Franklin*, 476 B.R. 545, 551 (Bankr. N.D. Ill. 2012); *In re Falconridge, LLC,* No. 07-bk-19200, 2007 WL 3332769, at *6 (Bankr. N.D. Ill. Nov. 8, 2007). Therefore, the Receiver McKinley is a custodian under, and subject to, § 543.

The bankruptcy court has discretion under § 543(d)(1) to excuse a state court receiver from its mandatory turnover obligation under § 543(b)(1). *See In re Picacho Hills Util. Co., Inc.*, No. 11-13-10742 TL, 2013 WL 1788298, at *7 (Bankr. D.N.M. Apr. 26, 2013); *In re Corporate & Leisure Event Prods., Inc.*, 351 B.R. 724, 732 (Bankr. D. Ariz. 2006). A party seeking such relief has the burden of establishing "by a preponderance of the evidence that the best interests of the creditors [and if the debtor is insolvent, the best interest of equity security holders of the Debtor] are served by permitting a custodian to retain control of the estate." *In re Picacho Hills Util. Co., Inc.*, No. 11-13-10742 TL, 2013 WL 1788298, at *7 (Bankr. D.N.M. April 26, 2013) (citing *Franklin*, 476 B.R. at 551).

In determining whether this burden has been satisfied, courts consider several factors, depending on the facts of a particular case, including:

> (1) The likelihood of a reorganization;
>
> (2) The probability that funds required for reorganization will be available;
>
> (3) Whether there are instances of mismanagement by the debtor;

(4) Whether turnover would be injurious to creditors;

(5) Whether the debtor will use the turned over property for the benefit of its creditors;

(6) Whether or not there are avoidance issues raised with respect to property retained by a receiver, because a receiver does not possess avoiding powers for the benefit of the estate; and

(7) The fact that the bankruptcy automatic stay has deactivated the state court receivership action.

Regardless of what factors are used to aid the court in its decision, the paramount and sole concern is the interests of all creditors[, and if the debtor is solvent, the interests of equity security holders].

*Falconridge*, 2007 WL 3332769, at *7 (citations omitted).

"Reorganization policy generally favors turnover of business assets to the debtor in a [C]hapter 11 case." *In re Orchards Vill. Invs., LLC.*, 405 B.R. 341, 352 (Bankr. D. Or. 2009) (citation omitted). But in cases where the custodian is a receiver who was appointed by a state court pre-petition, bankruptcy courts have considered the length of the time that the receiver has acted under a receivership order, and what, if anything, the receiver has done, and the impact of these considerations on the other relevant factors. Where there is evidence before the bankruptcy court, establishing that the interests of creditors would be better served by allowing the state court receiver to remain in possession and control of property of the bankruptcy estate, bankruptcy courts have denied turnover motions by the debtor and granted motions to excuse turnover. *See, e.g.*, *Orchards Vill. Invs.*, 405 B.R. at 353 (excusing a state court receiver from turnover of assets to the debtor under § 543(d)(1), after applying three relevant factors, where receivership had been in place for approximately six months before the debtor filed for relief under Chapter 11 and had improved substantially the conditions which caused the court to

appoint the receiver).

## 2. Section 305(a)(1)

Section 305(a)(1) of the Bankruptcy Code is an abstention provision. It states, in relevant part:

> (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if–
>
> > (1) the interests of creditors and the debtor would be better served by such dismissal or suspension[.]

11 U.S.C. § 305(a)(1). "The decision to dismiss under § 305 is discretionary, and must be made on a case-by-case basis." *In re O'Neil Vill. Pers. Care Corp*., 88 B.R. 76, 79 (Bankr. W.D. Pa. 1988) (citations omitted); *see also In re Corporate & Leisure Event Prods., Inc*., 351 B.R. 724, 732-33 (Bankr. D. Ariz. 2006) ("[A]lthough the existence of bankruptcy jurisdiction may be undeniable, bankruptcy courts nevertheless have discretion to abstain or suspend proceedings if 'the interests of creditors and the debtor would be better served.' Code § 305(a)(1).").

> The pendency of state law liquidation proceedings . . . is relevant to an abstention decision under section 305(a)(1). For instance . . . when the debtor has been in receivership for so long that the bankruptcy case would be duplicative and wasteful, courts have deferred to state courts and abstained under section 305(a)(1).

2 *Collier on Bankruptcy* ¶ 305.02[2][c], at 305-8 to 305-09 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2017) (footnotes omitted); *see also In re Newport Offshore Ltd.*, 219 B.R. 341, 354-55 (Bankr. D.R.I. 1998) (citing 11 U.S.C. § 305 and Collier at ¶ 305.02[2][c] (15th ed. Rev.1997) ("[Section] 305 provides that a bankruptcy court may dismiss a bankruptcy case or suspend proceedings within it in appropriate circumstances, which may include the pendency of state court receivership proceedings that appropriately serve the interests of involved parties.")

18

In *In re Orchards Vill. Invs.*, 405 B.R. at 351, the bankruptcy court listed the following factors that bankruptcy courts should consider in deciding whether to dismiss or abstain a case under § 305(a):

> Such factors generally include: (1) economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in a state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving the equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought.

*Id.* (citation omitted). "However, ultimately, dismissal is appropriate under § 305(a)(1) only in the situation where the court finds that *both* creditors and the debtor would be better served by a dismissal." *Id.* (internal quotation marks and citations omitted).

As with § 543(d)(1),[9] where the custodian is a receiver appointed by a state court, courts have considered the length of the time that the receiver has acted under a receivership order, what the receiver has done, and the impact of these considerations on the other relevant factors. *See, e.g.*, *In re Starlite Houseboats, Inc.*, 426 B.R. 375, 389 (Bankr. D. Kan. 2010) (dismissing the bankruptcy case under § 305(a)(1) where a "state court receivership had been pending for

---

[9] "The exception available under section 543(d)(1) is a modified abstention provision, akin to the abstention provisions found in section 305 of the Code. Comment to 11 U.S.C. § 543; [*In re*] *Constable Plaza Associates*, 125 B.R. [93,] 103 [(Bankr. S.D.N.Y. 1991)]." *In re Dill*, 163 B.R. 221, 225 (E.D.N.Y. 1994).

approximately eight months when [the bankruptcy] case was filed," the court finding that "the interests of creditors and the [d]ebtor would be served by dismissal of the case" because "continuation of the state court receivership proceeding, which [was] well underway, [was] preferable to starting anew in [the bankruptcy] court"); *In re Michael S. Starbuck, Inc.*, 14 B.R. 134, 135 (Bankr. S.D.N.Y. 1981) (dismissing involuntary Chapter 11 case under § 305(a)(1) where a receivership had been operating for approximately 14 months, noting that: "[i]n evaluating the best interests of the creditors and the debtor, efficiency and economy of administration are primary considerations;" [o]ver 1,400 hours and $4,500 have already been expended by the receiver and counsel in the administration of the estate;" "[a]llowing this matter to continue as a debtor proceeding under the Bankruptcy Code would result in a terrible waste of time and resources;" "[m]any services, already rendered in the administration of the receivership estate, would have to be repeated at additional expense to the estate;" and "[n]o advantage would accrue to the creditors if this matter were to proceed in the bankruptcy court").

## C. Application of relevant factors under 11 U.S.C. §§ 543(d)(1) and 305(a)(1)

Under the circumstances of this case, the Court concludes that an evidentiary hearing on the Turnover Motion and Canyon's Cross-Motion is not necessary. The Court finds and concludes that the interests of creditors and equity security holders would be better served by excusing the Receiver McKinley from complying with the turnover and accounting obligations under §§ 543(b)(1) and 543(b)(2) of the Bankruptcy Code, and by dismissing (rather than suspending) this bankruptcy case under Bankruptcy Code § 305(a)(1).

As an initial matter, the Court notes that it does not need to decide whether or not the Debtor is solvent. The Debtor argues that it is solvent, so that under § 543(d)(1), the Court must

consider not only the interests of creditors, but also the interests of the equity security holders of the Debtor, in deciding these motions. Canyon argues that the Debtor is insolvent, so that the Court may only consider the interests of creditors, and not the interests of the equity security holders, in deciding whether to excuse McKinley from complying with its turnover obligation. For purposes of this opinion, the Court will assume that the Debtor is solvent, so that the Court must consider both the interests of the creditors and the equity security holders of the Debtor in its analysis under § 543(d)(1). This assumption does not change the outcome, because as it turns out, the interests of the creditors and the interests of the equity security holder(s) are aligned in this case, for purposes of § 543(d)(1). The interests of both will be better served by excusing turnover.

The Court has considered all of the arguments of the parties, and all of the §§ 543(d)(1) and 305(a)(1) factors identified in Parts V.B.1 and V.B.2 of this opinion. But the most important factor in this case, which overwhelms all other factors, is that the Court has denied the Debtor's DIP Financing Motion.

The Debtor and Canyon agree, and no other party disputes, that it is in the best interests of the Debtor, the Debtor's equity holder(s), and the creditors, that the Debtor's construction Project and development in Ann Arbor be completed and stabilized (fully rented out, essentially), all as soon as possible, and all as cost-efficiently as possible. And all agree that time is of the essence with this Project.

These objectives cannot possibly be achieved if the Court displaces the state court Receiver by granting the Debtor's Turnover Motion. The Debtor has no funds available that it can use to do any work toward completing the construction of the Project. The Court has just

denied Debtor's DIP Financing Motion.  It is undisputed that without post-petition financing, the

Debtor has no money with which to perform any work on the Project or to fund its Chapter 11

bankruptcy case.  As explained in more detail in the Court's separate opinion filed today

regarding the Debtor's DIP Financing Motion, the Debtor says that it needs to borrow roughly

$11.9 million to complete the Project and a total of $22 million to complete and stabilize the

Project and fund its bankruptcy case.  (Canyon says the $11.9 million figure is much too low.)

And the Debtor says that it cannot obtain post-petition financing other than on the terms it has

proposed, and in particular, without giving its DIP lender a lien that primes (takes priority over)

all other liens.  Yet this Court has found that the Debtor cannot obtain such financing, because

with such a priming lien there is a lack of adequate protection of the existing lien holders'

interests.

All of this compels the conclusion that the Debtor has no ability to complete the Project,

let alone complete and stabilize the Project.  That leaves the existing state court receivership as

the only viable option for completing and stabilizing the Project.  It is clear and not genuinely

disputed that if the Receiver is permitted to continue the efforts it was making when the Debtor

filed this bankruptcy case, the Receiver will be able to obtain the financing necessary to complete

and stabilize the Project, through the existing and proposed amended Receivership loan from

Canyon.

Under these circumstances, the only viable choice is for this Court to allow the state court

Receiver to continue to perform and control the construction, completion, and ultimate

stabilization of the Project, under the supervision and control of the state court.  That, in turn,

requires this Court to deny the Debtor's Turnover Motion, and to grant Canyon's Cross-Motion.

Not only is this decision compelled by the circumstances, but also, it will avoid what appear to be delays and inefficiencies that inevitably would result if the Debtor were permitted to displace the Receiver and regain control of the Project. If the Debtor regained control, that would amount, in effect, to changing horses in mid-stream, for a third time. The *first time* was when the Debtor fired its general contractor, Quandel, on October 17, 2016, and began to replace Quandel with the Debtor's new general contractor, C.E. Gleeson Constructors, Inc. The *second time* was when the state court appointed the Receiver, on November 1, 2016, after which the Receiver chose to use a new general contractor, O'Brien Construction Company, Inc. If the Debtor had its way, now would be a *third time* — after the Receiver has been working extensively with O'Brien for more than 10 months (and O'Brien put together a new slate of subcontractors), the Debtor filed this bankruptcy case seeking to regain control and put Gleeson back in place of O'Brien as general contractor (and to try to line up once again the Debtor's old slate of subcontractors.)

In reaching its decision, this Court is mindful of the long list of complaints made by the Debtor and some of the construction lien claimants (especially Quandel and Gaylor), both in the state court to a large extent, and now in this Court, about the state court's appointment of the Receiver; about the original Receivership Loan; about the Receiver's borrowing and disbursements under that loan; about actions and alleged inactions by the Receiver and O'Brien; and more recently, about the efforts by the Receiver to increase and amend the terms of the Receivership Loan. These many complaints have been and are very much disputed by Canyon and also by the Receiver, and some of these complaints were already heard, considered, and rejected by the state court.

Under the circumstances, the state court in the receivership case is the appropriate and available forum for the complaining parties to raise their complaints and seek relief. (And to the extent they are suffer adverse rulings by the state trial court, aggrieved parties may seek relief in the Michigan Court of Appeals). While the Debtor, Quandel, Gaylor, and perhaps some of the other lien holders would rather escape from the state court to this Court, this Court is confident that the state court is both legally able, and fully capable, to fairly hear and decide the merits of the complaints. No party in this case has given this Court any valid reason to think otherwise.

As several of the parties have pointed out, under Michigan law, the Receiver McKinley has a fiduciary duty to all of the lien holders, not just Canyon, and to the Debtor. *See, e.g.*, Mich. Comp. Laws Ann. § 570.1122(2) ("Any receiver appointed under this section shall be deemed a fiduciary for the benefit of all persons having or claiming interests in the real property, and shall exercise his or her office accordingly.") And the Receivership Order and Michigan law give the state court extensive supervisory authority and control over the Receiver, to make sure he fully complies with all of his duties. *See, e.g.*, Mich. Comp. Laws Ann. §§ 570.1122, 570.1123; 600.2927; Mich. Ct. R. 2.622. The state court is the appropriate forum for the parties to carry on their disputes.

For these reasons, the Court finds and concludes that, in the words of Bankruptcy Code § 543(d)(1), "the interests of creditors and . . . of equity security holders would be better served by permitting" the Receiver "to continue in possession, custody, [and] control of" the Debtor's property.

And the Court finds and concludes that, in the words of Bankruptcy Code § 305(a)(1), "the interests of creditors and the debtor would be better served by . . . dismissal" of this

bankruptcy case. Given the Court's decisions today on the competing § 543 motions, and on the Debtor's DIP Financing Motion, this bankruptcy case essentially has nowhere to go. This Court is abstaining, in favor of the state court receivership action. So this case should be suspended or dismissed. As between these two options available under § 305(a)(1), the Court agrees with the suggestion of counsel for the United States Trustee that merely suspending this bankruptcy case, as opposed to dismissing it, would not be workable, and would not serve any useful purpose. A dismissal will avoid any needless confusion or doubt about the ability of the Receiver and the state court in the receivership case to carry on, as if no bankruptcy had been filed.

So the Court will dismiss this case. And in order to prevent any attempted evasion by anyone of the Court's decisions today, the Court will bar the filing of any new bankruptcy case, by or against the Debtor, for a period of two years. This should give ample time for the Receiver to finish completion and stabilization of the Project, and for the state court receivership case to substantially conclude. Imposing this bar to a new bankruptcy filing is within the Court's discretion and authority, under 11 U.S.C. § 105(a), and also under 11 U.S.C. § 349(a).

## VI. Conclusion

For the reasons stated in this opinion, the Court will enter an order denying the Debtor's Turnover Motion, granting Canyon's Cross-Motion, and dismissing this bankruptcy case. And the Order will bar the filing of any new bankruptcy case by or against the Debtor for two years.

**Signed on October 13, 2017**



/s/ Thomas J. Tucker

**Thomas J. Tucker**
**United States Bankruptcy Judge**